**Matthew WILSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. ED 97772.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 23, 2012.

Andrew E. Zleit, Assistant Public Defender, Office of the Missouri Public Defender, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, Gregory L. Barnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Judge.

## Introduction

Matthew Wilson ("Wilson") appeals from the motion court's denial, without an evidentiary hearing, of his Rule 29.15 [1] motion for post-conviction relief. Wilson was convicted after a jury trial of first-degree robbery under Section 569.020,[2] felonious restraint under Section 565.120, forcible sodomy under Section 566.060, sexual abuse under Section 566.100, and four counts of armed criminal action under Section 571.015. This Court affirmed Wilson's conviction on direct appeal in *State v. Wilson*, 320 S.W.3d 222 (Mo.App. E.D.2010). Wilson subsequently filed, and the motion court denied, a motion for post-conviction relief on grounds of ineffective assistance of appellate counsel and prosecutorial misconduct. We hold that Wilson's appellate counsel was not ineffective for failing to raise on direct appeal a nonmeritorious point. In addition, Wilson may not raise his claim of prosecutorial misconduct in his motion for post-conviction relief because he failed to raise that claim in his direct appeal despite having knowledge of the actions upon which he based his allegations of misconduct. Because the motion court did not clearly err in denying Wilson's motion for post conviction relief, we affirm.

## Factual and Procedural History

Viewed in the light most favorable to the verdict, the evidence presented at trial is as follows. In March 2007, Wilson contacted a real estate agent and informed her that he was interested in purchasing a new home. The agent met Wilson at the real estate office and showed him several homes for sale over the next two days. On the third day, Wilson and the agent visited another home. During the showing, Wilson brought the agent into the basement and pulled out a gun. Wilson told the agent not to scream or he would kill her. Wilson then handcuffed the agent to a pole in the basement and demanded money. Wilson took the agent's wallet, cash, wedding ring, credit cards, and driver's license and told the agent that he knew where she lived and would come find her. Wilson then pulled down the agent's sweater, undid her pants, and touched the agent's breasts and genitals. Wilson also told the agent he wanted to "screw" her. Wilson

---

1. All rule references are to Mo. R.Crim. P. (2007).

2. All statutory references are to RSMo. Cum. Supp.2007.

then placed a knife to the agent's throat, told her not to scream, and then left the home, leaving the agent handcuffed to a pole in the basement. The agent remained in the basement for several hours until she was discovered by her husband and another real estate agent.

Wilson pawned the agent's wedding ring in Tennessee and was later arrested in Texas in a car with another female real estate agent. At the time he was arrested, Wilson was in possession of the credit cards, business cards and driver's license of the real estate agent he accosted in March 2007. The vehicle in which Wilson was arrested also contained a receipt from the store where the agent's wedding ring was pawned and a BB gun pistol. Wilson's fingerprints were found in the home where the agent was assaulted and on the agent's business card case. The agent also identified Wilson from a photo lineup and again at trial. State charged Wilson with first-degree robbery, felonious restraint, forcible sodomy, sexual abuse, and four counts of armed criminal action.

On October 5, 2007, Wilson filed a motion to dismiss his public defender Lou Horwitz ("Horwitz"). Horwitz made a separate motion to withdraw as counsel. The trial court subsequently denied both motions. On October 18, 2007, the trial court revisited Wilson's motion. During a hearing, Wilson said that he was attempting to retain private counsel. Wilson also complained that Horwitz advised him to plead guilty without conducting a sufficient investigation, and that he believed Horwitz did not want to represent him. Wilson further claimed that Horwitz and the state prosecutor were working together. The trial court found that it had every reason to believe that Horwitz was providing competent representation and that Horwitz was not creating any type of conflict with Wilson. The trial court also found that

there was no evidence that Horwitz and the state prosecutor were engaged in a conspiracy. The trial court noted that Wilson could not obtain substitute counsel based upon a conflict with Horwitz that Wilson created. The trial court finally advised Wilson that Horwitz was capable of representing him, but that Wilson was permitted to obtain private counsel.

On December 20, 2007, the trial court heard Horwitz's second motion to withdraw as counsel. Horwitz filed the motion because Wilson had invoked his right to represent himself. At the hearing, Wilson stated that he wanted to represent himself because he believed that was the only way he would obtain a fair trial. On December 21, 2007, the trial court held a second hearing on Horwitz's second motion to withdraw as counsel. Wilson signed a waiver form stating that he wanted to self-represent, that the trial court had advised him to obtain an attorney, and that Wilson had the opportunity to read and ask questions about the waiver. After being advised of his right to an attorney, Wilson stated under oath that he wanted to represent himself irrespective of his dissatisfaction with Horwitz as his public defender. During the hearing, the following exchange occurred on the record:

Court: You have advised me, Mr. Wilson, that you wish to discharge counsel and represent yourself, is that correct?
Wilson: Yes, Your Honor.
Court: Why don't you want to be represented by your counsel, Mr. Horwitz?
Wilson: Several reasons. I believe he's working with the prosecutor from the start. Some of the deals he brought without even seeing—even getting the discovery yet and trying to plead a deal before he even seen the discovery or talking to me is kind of odd. And I—to me, he just ain't doing the case like it should. I'm not going to get the justice

that I need to try to prepare. I have—you know, there's so much out there. And he told me his investigator is three months behind, you know, on investigation, and he's got over a hundred cases he's doing hisself, you know, so he ain't got time for my case. I got time for my case.

Court: Mr. Wilson, you have the right to the assistance of counsel, although you do not have the complete freedom to choose counsel. Is the problem with this particular counsel or do you simply wish to represent yourself?

Wilson: Represent myself.

Court: Okay. That's an important question. Because if it's just that you don't like this counsel and you want to get somebody else, that's not the same as wanting to represent yourself. So are you telling me that no, in fact you just want to represent yourself regardless of your feelings about the public defender?

Wilson: Yes, Your Honor.

. . .

Court: All right. Mr. Wilson, has anybody threatened you, mistreated you, offered you any promise or consideration, or in any way forced you to act as your own lawyer?

Wilson: I have no choice. No, Your Honor.

. . .

Court: Okay. Now, when you say you have no choice, you do have a choice.

Wilson: No, I don't.

Court: You understand you have a choice?

Wilson: No, I don't have a choice. I got to defend myself. That's the only way I'm going to be defended.

Court: Well, there are lots of lawyers who are capable of defending you, Mr. Wilson. Would you agree with that?

Wilson: No.

Court: No?

Wilson: No, not the experience I've had with lawyers. I've defended myself in one case.

Court: Okay. Well, I don't want to—I don't want to get into a discussion of the competency of various attorneys. But here's my—here's my concern about this and my question to you. You absolutely have a choice because this—in order for me to accept your waiver, I have to find that it is completely voluntary, intelligently made, knowingly made, and freely given. And if you tell me you don't have a choice, I don't have a very high level of comfort with that.

Wilson: It's all freely given, freely made, and all that because I have to do it. I have to make that choice. Well, not exactly that. It's just I'm not going to have an attorney that does whatever—that's the prosecutor's lackey you can say. I'm not the prosecutor's lackey, I'm going to represent myself. I'm representing myself, end of story. We can go at this all day, I'm representing myself, Your Honor. I'm a lackey for no prosecutor.

Court: Okay. Mr. Wilson, for the last time then, once again, the advice of this Court is to strongly advise you against representing yourself. Having said that, do you want to represent yourself?

Wilson: Yes, Your Honor.

Court: Okay. Thank you.

Accordingly, the trial court found that Wilson had been fully informed of his right to assistance of counsel, understood that right, and had knowingly, voluntarily, and intelligently waived his right to counsel.

Wilson represented himself at trial and testified in his own defense. A jury found Wilson guilty of first-degree robbery, forcible sodomy, felonious restraint, sexual abuse, and four counts of armed criminal

action. Wilson did not file a motion for a new trial. Wilson was sentenced as a prior and persistent offender to two consecutive sentences of life, two sentences of 15 years imprisonment, and four sentences of 25 years imprisonment.

Wilson filed a direct appeal alleging that the trial court plainly erred in allowing Wilson to proceed to trial *pro se* because Wilson did not knowingly, intelligently, and voluntarily waive his right to assistance of counsel.[3] This Court held that Wilson knowingly, voluntarily, and intelligently waived his right to counsel and affirmed his conviction on direct appeal. Wilson subsequently filed a motion for post-conviction relief alleging ineffective assistance of appellate counsel and prosecutorial misconduct. The motion court denied Wilson's Rule 29.15 motion without an evidentiary hearing. This appeal follows.

### Points on Appeal

In his first point on appeal, Wilson argues that the motion court erred in denying, without an evidentiary hearing, his claim that appellate counsel was constitutionally ineffective in failing to assert on direct appeal that the trial court plainly erred in failing to appoint substitute counsel. In his second point, Wilson contends that the motion court clearly erred in denying his motion as to his claim of prosecutorial misconduct.

### Standard of Review

Appellate review of a motion court's denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court were clearly erroneous. Rule 29.15; *Day v. State,* 770 S.W.2d 692, 695 (Mo. banc 1989). The motion court's findings and conclusions are presumptively correct and will be overturned only when this Court is left with a "definite and firm impression that a mistake has been made" after reviewing the entire record. *Vaca v. State,* 314 S.W.3d 331, 334 (Mo. banc 2010).

### Discussion

**I. The motion court did not clearly err in denying Wilson's claims of ineffective assistance of appellate counsel.**

 In his first point, Wilson argues that the motion court erred in denying his motion because his appellate counsel was constitutionally ineffective in failing to appeal the issue of whether the trial court committed plain error in failing to appoint substitute defense counsel.

It is well established that "[t]o obtain an evidentiary hearing for claims related to the ineffective assistance of counsel, the movant must allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that the movant was thereby prejudiced." *Morrow v. State,* 21 S.W.3d 819, 823 (Mo. banc 2000) (internal citations omitted). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that [the proceedings] cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, there is a strong presumption that defense counsel's

---

**3.** The State asserted in its brief and again during oral argument that the issue on direct appeal was whether the trial court plainly erred in failing to appoint substitute counsel on grounds that Wilson failed to knowingly, voluntarily, and intelligently waive his right to assistance of counsel. We find no evidence in the record, or in our mandate, supporting State's claim as to the issue Wilson raised on direct appeal.

strategy was reasonable, and judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689, 104 S.Ct. 2052. Therefore, relief will only be granted where the movant can show both deficient performance and prejudice. *Id.* at 692, 104 S.Ct. 2052.

To prevail on a claim of ineffective assistance of appellate counsel, the movant must establish that appellate counsel failed to raise a claim of error that was so obvious that a competent and effective attorney would have recognized and appealed the issue. *Tisius v. State,* 183 S.W.3d 207, 215 (Mo. banc 2006). The claimed error must have been sufficiently serious as to create a reasonable probability that, if the issue had been raised on direct appeal, the outcome of the appeal would have been different. *Id.* Appellate counsel enjoy a presumption that failure to raise an issue on direct appeal was the result of their reasonable professional judgment. *Toten v. State,* 295 S.W.3d 896, 899 (Mo.App. S.D.2009) (internal citations omitted). Appellate counsel are not required to raise every non-frivolous point of appeal. *Jones v. Barnes,* 463 U.S. 745, 753–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

The record clearly supports the motion court's finding that appellate counsel was not ineffective. First, we note that Wilson did not preserve for direct appeal the issue of whether the trial court erred in failing to appoint substitute counsel. Accordingly, at most, this Court would have reviewed this claim only for plain error. Importantly, Wilson has not shown that we would have undertaken plain error review of this issue.[4]

We are not persuaded that Wilson's claim of plain error due to the trial court's failure to appoint substitute counsel would have been meritorious on direct appeal. Under the protections afforded under the Sixth Amendment, criminal defendants are not entitled to appointed counsel of their choice. A criminal defendant does not have a right to select from an array of appointed public counsel until they are satisfied. *State v. Williams,* 9 S.W.3d 3, 10 (Mo.App. W.D.1999). To warrant substitution of counsel a defendant must demonstrate justifiable dissatisfaction with appointed counsel. *Id.* We note that mere dissatisfaction with counsel is not the test we apply to ensure a criminal defendant's constitutionally protected right to counsel. A defendant's dissatisfaction with counsel must be justifiable before the Sixth Amendment requires the appointment of substitute counsel. *State v. Johnson,* 328 S.W.3d 385, 398–99 (Mo.App. E.D.2010).

Here, the record on appeal shows that any conflict between Wilson and Horwitz was created by Wilson, and was not justifiable. The record lacks any facts indicating inappropriate actions or omissions by Horwitz. Wilson argues Horwitz's early desire to discuss a plea with Wilson suggests an irreconcilable conflict and breakdown in the attorney client relationship that warrants the appointment of substitute counsel. Given the facts and evidence of this case, we are unwilling to consider defense counsel's desire to explore a possi-

**4.** We note State's citation to cases suggesting that appellate counsel are not ineffective for failing to raise on direct appeal an unpreserved error that would have been subjected to the rigorousness of plain error review. *See Holman v. State,* 88 S.W.3d 105, 110 (Mo. App. E.D.2002) and *Honeycutt v. State,* 54 S.W.3d 633, 650 (Mo.App. W.D.2001). We are not convinced that appellate counsel may never be found ineffective for failing to raise unpreserved issues, and have found no Missouri Supreme Court case suggesting such an absolute application of this principle. However, we need not reach that issue given our finding that Wilson would not have prevailed had his appellate counsel raised this issue as plain error on direct appeal.

ble plea as justification for Wilson's subsequent attitude toward appointed counsel. The record clearly indicates that while Wilson voiced a general dislike for Horwitz, he was unable to articulate specific facts supporting his dissatisfaction when questioned by the trial court. During the first hearing on the issue, the trial court queried Wilson regarding the basis of his dissatisfaction with Horwitz. Wilson said that his justification was based upon his general belief that Horwitz was working with the prosecutor and did not want to represent him. However, Wilson did not provide any facts supportive of these assertions. The trial court repeatedly asked Wilson whether he would cooperate with Horwitz. Wilson refused to agree to cooperate with his public defender. The trial court also specifically held that Wilson's factual allegations as to the existence of a conspiracy between Horwitz and the prosecutor were not credible. The record before us is clear that any dissatisfaction Wilson expressed with appointed counsel was of Wilson's making, and unjustified. Accordingly, the trial court was under no obligation under the Sixth Amendment to provide Wilson with substitute counsel. *See id.* Because Wilson's claim as to the trial court's failure to appoint substitute counsel had no merit, appellate counsel was not constitutionally ineffective in failing to raise said point on direct appeal. Point denied.

## II. The motion court did not clearly err in denying Wilson's claims of prosecutorial misconduct.

 Wilson's second point on appeal focuses on claims of prosecutorial misconduct. In particular, Wilson avers that the motion court erred when it denied, without an evidentiary hearing, his post-conviction motion based upon prosecutorial misconduct.

"A freestanding claim of prosecutorial misconduct is generally not cognizable in a Rule 29.15 proceeding." *Tisius v. State*, 183 S.W.3d 207, 212 (Mo. banc 2006). "If the alleged misconduct was apparent at trial, then it is an issue for direct appeal, not a Rule 29.15 proceeding." *Id.* Accordingly, we review claims of prosecutorial misconduct under Rule 29.15 only when the alleged misconduct was serious and would not have been apparent at trial. *Id.*

Because Wilson had knowledge of the alleged prosecutorial misconduct at the time trial, Wilson does not satisfy the requirements allowing his claim to be considered in a post-conviction motion. The record shows that Wilson had knowledge of the alleged prosecutorial misconduct before trial when Wilson filed his motion for a continuance on May 28, 2008. As grounds for his motion for continuance, Wilson stated that the assistant prosecuting attorney interfered with his right to present a defense, including securing evidence and calling defense witnesses. The trial court heard and denied Wilson's motion on June 10, 2008. Wilson now asserts these same facts and allegations as the basis for his claims of prosecutorial misconduct in his motion for postconviction relief. We note that the trial court also conducted multiple hearings where Wilson claimed that the prosecutor interfered with witnesses subpoenaed by Wilson and withheld or obstructed the collection of evidence. Although Wilson failed to present any evidence of prosecutorial misconduct to the trial court, the record on appeal is clear that Wilson was aware of the actions upon which he based his allegations of misconduct at the time of trial. Wilson could have raised these claims on direct appeal. Having failed to raise on direct appeal the alleged prosecutorial misconduct known to him at trial, Wilson is precluded from asserting now the same facts

as his basis for post-conviction relief. *See Tisius,* 183 S.W.3d at 212. Point denied.

### Conclusion

Finding no clear error, we affirm the judgment of the motion court.

LAWRENCE E. MOONEY, and PATRICIA L. COHEN, J., concur.